HOUSER *et ux.* v. RUFFNER, ADM'R, *et al.*

Decided July 1, 1881.

1. M. died in 1864 leaving a will, by the first clause of which he directed his funeral expenses and debts to be paid; by the second clause he provides: "the residue of my estate both real and personal after the payment of all my just debts I desire to be divided, as the law prescribes, between my beloved wife and my children, no preferences being made, the children to have an equal share, subject however to the following special bequests." In the third clause of the will he provides: "In regard to the division of my estate, whether the same shall consist of realty, notes or personal property, slaves included, let the whole be appraised, and after providing for the legacies above named set off one third for my wife during her natural life, and let the residue be divided into as many parts as there shall be children to inherit it, the said parts, to be drawn by lot," &c. HELD:

The widow took a life estate in the land and slaves and an absolute estate in the balance of the personal property.

2. Where the general intent of the testator is clear, that general intent must prevail over the particular or special intent expressed in a part of the will, where it is impracticable from the language used to give effect to both the general and particular or special intent.

3. When a testator uses in one part of the will words having a clear meaning in law, and in another part words inconsistent with the former, the first words are to be cancelled and overthrown, only when the two provisions are totally inconsistent with each other, and where the real intention of the testator cannot be ascertained.

4. In construing wills words and expressions of doubtful meaning will not be construed, if it can be avoided, so as to create an intestacy. The testator having made his will will be presumed to have intended to dispose of his whole estate, unless the contrary shall plainly appear.

5. After the death of the testator, one of the devisees brings a suit to obtain a partition of real estate and distribution of the personal estate, the court assigns to the widow one third of the real estate "for and during the term of her natural life" and decrees payment to her of one third of the personal estate by the executor without words of qualification. HELD:
    As it was not necessary in that case to determine, what estate in the personalty the widow took under the will, she being entitled to the possession of it in any event, such decree is not *res judicata* of the quantity of estate in the personalty she took under the will.

6. A life-tenant of money or other personal chattels *under a will* is entitled to the possession of it and without being required to give security for its return to those in remainder or reversion upon the termination of the life estate as a matter of course, but only as a matter of sound discretion to be exercised by the courts under special circumstances.

Appeal from and *supersedeas* to a decree of the circuit court of Kanawha county, entered on the 16th day of December, 1879, in a cause in said court then pending, wherein J. A. Houser and wife were plaintiffs, and David L. Ruffner, adm'r. and others were defendants, allowed upon the petition of said Ruffner.

The circuit court of Kanawha county rendered the decree appealed from.

PATTON, JUDGE, furnished the following statement of the case :

James C. McFarland died in 1864, leaving a will. The will provides:

"First. I will and desire that all my just debts and funeral charges be paid. To that end I desire so much of my per-

sonal estate (except slaves) be sold as will be required to discharge the same.

"Second. The residue of my estate, both real and personal, after the payment of all my just debts, I desire to be divided as the law prescribes between my beloved wife and my children. No preferences being made, the children to have an equal share, subject however to the following special bequests, viz, to John Welch in trust for the benefit of the children of Henry D. McFarland, deceased, six hundred dollars, to Julia Welch, wife of said John Welch, five hundred dollars, and to Susan L. McFarland five hundred dollars in case she shall marry after my decease, but if she shall not marry, then it is my desire that she be comfortably supported out of my estate during life. These several bequests I desire to be paid if practicable out of my personal estate, not including slaves.

"Third. In regard to the division of my estate, whether the same shall consist of realty, stocks, or personal property, slaves included, let the whole be appraised, and after providing for the legacies above named, set off one third for my wife during her natural life, and let the residue be divided into as many parts at there shall be children to inherit it—the said parts to be drawn for by lot, and as it may be impracticable to make an equality in the division without subdividing certain property, let such heir or heirs as may draw an excessive share in amount account in money or its equivalent to any such heir or heirs as may have drawn a share or shares of less value, so that the whole may be made as near equal as possible."

The testator left surviving him his widow, Maria McFarland, and Rowena Laidley, Anna K. Cecil and Ellen McFarland, his children by a former marriage. In 1865 Anna K. Cecil, together with her husband, brought a suit in the circuit court of Kanawha county, making all the persons interested in said will parties defendant, including Joel Ruffner, the administrator *de bonis non, c. t. a.* of James C. McFarland. In that bill they allege the death of the testator, the probat of the will (a copy of which is made an exhibit) and large real and personal assets. They say: :

"It will be perceived that the testator by his will directs: After the payment of his debts and certain legacies therein

specified and enumerated, that his whole estate, real and personal, be appraised; that one third part thereof be set apart for his widow during her natural life, and that the 'residue of said estate be divided into as many parts as there should be children to inherit it, the said parts to be drawn for by lot,' and to avoid the sub-division of lots and parcels, he directs equality of shares to be reached, where necessary, by owelty of partition. * * * * * * It will be seen therefore, that after the payment of debts and specific legacies, and after the assignment of one third of the estate to Mrs. Maria McFarland for life, that the residue of said estate is subject to immediate division and partition into three parts as between your orator and oratrix, the said A. T. Laidley and wife and the said Ellen McFarland, with remainder to the same parties in the one third of said estate assigned to Mrs. Maria McFarland after the termination of her life-estate therein. * * * * The personal estate of the decedent is ample to pay the remaining debts and legacies mentioned in the will, if any there be unpaid, without resorting to any portion of the real estate. Your orator and oratrix need the use, profits and issues of their share of the real estate. The other heirs or *devisees* in like manner need theirs. It is best for all parties—the widow, as well as the children of the testator, that they should know and have possession of the portions of the real estate, which may be assignable to them respectively at the earliest possible moment. It is also extremely desirable that the personal estate of the decedent should be settled, adjusted and distributed among those entitled thereto. * * * * * And your orator and oratrix pray, that by a proper order of this court a full settlement of the personal estate of the testator may be had, and a distribution thereof be made among the parties entitled thereto."

On the 28th day of October, 1865, a decree was entered confirming the report of commissioners, who had previously been appointed to partition the real estate, and the report of a commissioner of the court showing among other things a fund in the hands of the administrator, subject to distribution, of $14,000.00. By this decree Joel Ruffner, the administrator, was directed to pay over to Maria McFarland $3,000.00, to pay to Cecil and wife $3,000.00, and to pay to Ellen Mc-

Farland $3,000.00. No payment was directed to be made to Rowena Laidley, because of advancements made by the testator to her. As to the land partitioned to Maria McFarland, the decree provides, that she is to hold it "during the term of her natural life as her third part of the real estate, of which her said husband died seized." On the 19th day of December, 1865, another decree was pronounced in the cause directing further payments to be made by the administrator of $1,000.00 to each of the parties before named.

Maria McFarland died in 1874; and in 1876 J. A. Houser and wife, formerly Ellen McFarland, and Anna K. Cecil brought suit in the circuit court of Kanawha county, to which they make David L. Ruffner, adm'r of Maria McFarland, Rowena Laidley and her husband and the next of kin of Maria McFarland parties defendant. They exhibit with this bill the will of J. C. McFarland, a copy of the bill and the two decrees above referred to, allege the allottment to Maria McFarland of one third of said estate both real and personal for her life, and pray, that the personal estate so received by her be decreed to them and Rowena Laidley. They say:

"The record of said suit is still remaining in your Honor's court, and is prayed to be taken and read as part of this bill; that the said widow, Maria McFarland, elected and agreed to take under the will of the said James C. McFarland, deceased, and did take the provision made for her therein in lieu of her dower at law. As will be seen by reference to the record of said suit, such proceedings were had therein, that all of the debts of the said James C. McFarland, and the specific legacies mentioned and enumerated in his will, were paid off and discharged, one third of the residue of his estate, both real and personal, allotted to his widow, the said Maria McFarland, for and during the term of her natural life, and the remainder divided between his three daughters, Ellen, Anna K. and Rowena, with remainder to them jointly in the one third allotted to the said Maria McFarland. * * * * * * * * * *; that since the death of the said Maria McFarland, that portion of the real estate of the said James C. McFarland, which was allotted to her as aforesaid for and during the term of her natural life, has been duly partitioned between

the plaintiffs, Ellen Houser and Anna K. Cecil, and the defendant, Rowena Laidley."

They claim, that under the will of James C. McFarland they together with Rowena Laidley were vested with the remainder in the personal estate received by Maria McFarland under the will. The prayer of the bill is, "that the claim of the plaintiffs and the said Rowena Laidley to the said personal estate may be enforced, and that the said administrator, David L. Ruffner, be decreed to pay over to the plaintiffs and the said Rowena the said personalty."

The defendants except Laidley demurred to the bill; but the court overruled the demurrer. They then answered, denying the allegations of the bill so far as the same were intended as a claim, that the suit of Cecil and wife vs. McFarland (the bill and two decrees in which suit are exhibited with the bill) adjudicated and determined, what estate Maria McFarland took in the personalty, but claiming that if that suit is to be considered an adjudication of that question, the adjudication was, that she took a life-estate in the realty and an absolute estate in the personalty.

The court below held, that she took only a life-interest in the real and personal estate, and that the complainants and Rowena Laidley were entitled to the same in remainder in equal proportions, and decreed, that David L. Ruffner, administrator of Maria McFarland, should pay to them the sum of $7,152.00 with interest from the date of the decree.

From this decree the administrator of Maria McFarland applied for and obtained an appeal to this court.

*Robert White,* for appellant, cited the following authorities: 9 Leigh 79; 1 McCord Chy. 443; 9 Gratt. 273; 8 W. Va. 249; 11 W. Va. 449; 10 W. Va. 59; 2 Lomax Ex'rs (1841) 407; 3 Bac. Abr. "Ex'rs" L. 1; 13 W. Va. 230; 2 Munf. 162; 2 Johns. Chy. 614; 6 Munf. 163; Low. ex'rs "Devastavit"; 2 Johns. 246; 1 Wash. 308; 2 Rob (old) Pr. 227 et seq.; 11 Gratt. 622; 9 Gratt. 477; 6 Gratt. 456; 14 Ohio St. 251; 27 Gratt. 560; 1 Bradf. Sur. R. 208; *Id.* 437; 6 N. Y. 419; 3 Sim. (6 Eng. Chy.) 24; 4 Mass. 208; 11 Mass. 528; 14 N. H. 215; 7 Paige 187; 24 Ga. 372; 7 Watts & S. 284; 6 Munf. 374; 5 Leigh 234; 6 Jur. N. S. 1043; Redf. on Wills,

p. 447, § 37 ; 10 Ind. 559; 16 N. Y. 83 ; 3 Whart. 162; 3 Jones Eq. 358 ; 13 W. Va. 822; Wyg. on Wills (1872) p. 153, § 376, p. 162, § 396; Id. 175; 12 Gratt. 205; Redf. on Wills (1864) pp. 670, 684.

Thomas L. Michie, for appellees, cited the following authorities:    17 Gratt. 349 ; 3 Ohio St. 369 ; 15 W. Va. 646 ; 8 W. Va. 1; 17 Gratt. 1; 38 Me. 9 ; 5 Mo. 474 ; 1 P. Wms. 663; 1 Munf. 549 ; 18 Ves. 421 ; 4 Mass. 208 ; 13 Ohio St. 95 ; 3 Ohio 498 ; Min. Inst. B. 2. p. 1119 ; 9 Gratt. 477 ; 14 Ohio St. 251; 6 Gratt. 456; 14 N. J. Eq. 124; 1 Jones L. 365; 17 Ohio St. 396 ; 2 Snead 387; 1 Watts (Pa). 466 ; 8 Leigh 306 ; 24 Ga. 372; 11 La. An. 541; 5 N. H. 326; 6 Watts. (Pa.) 345.

PATTON, JUDGE, announced the opinion of the court :

There are a number of questions raised by the record in this case, which have been argued by counsel. I deem it necessary to consider only two. If in the suit brought by Cecil and wife it was adjudicated by the court, what interest Maria McFarland took under the will of James C. McFarland in the personalty, whether an absolute estate or only an estate for life, that adjudication can not be called in question in this suit, and the rights of the parties must be considered as settled and determined. It is necessary then to see, whether that question was in issue in that suit and adjudicated by the court, and whether such adjudication is so presented by the record in this suit, as to warrant the court in considering the matter at all.

The complainants in their bill make the bill and two decrees in Cecil and wife v. McFarland et als., a part of their bill and allege, that by those decrees one third of said estate both real and personal was allotted to Maria McFarland for her natural life. It is not however distinctly claimed, that those decrees were an adjudication of the question, what estate she took in the personalty. Nor does it appear, whether complainants rely upon those decrees as an adjudication of that question. But still if it appears by the bill of the complainants, that there has been an adjudication of the question by a court of competent jurisdiction in a proceeding, in which that question could properly arise, and between the same parties or

their privies to this controversy, it is *res judicata*, although it is not so claimed or relied upon either in the bill or in the answer. If the bill shows a want of equity upon its face, the complainants are entitled to no relief. If it exhibits so much of the record of a former suit, as shows an adjudication of the matter in controversy, there is a want of equity; but it must distinctly appear, that the matter was in issue and was adjudicated. It is not sufficient, that it was incidentally cognizable by the court, and that the adjudication be inferred by argument from the decree. 7 Rob. Pr. 5; 10 W. Va. 250.

The suit of Cecil and wife was brought to partition the real estate and distribute the personalty under the provisions of the will. The bill alleges, that Maria McFarland took only a life interest in the personal estate, and, so far as that portion of the record exhibited in this cause shows, that construction of the will was not denied by the answer. It appears by the decrees, that one third of the real estate was allotted to Maria McFarland "during the term of her natural life;" that one third of the personalty was decreed to her without words of qualification; from which by argument it might be inferred, that it was intended, she should take the real estate for life but the personalty absolutely.

If before there could have been a decree directing the administrator to pay over to Maria McFarland one third of the personal estate, it was necessary to determine, whether she was to hold it absolutely or only for life, or if the law required, that before a life-tenant was entitled to receive money or other personal chattels, he should give bond and security for the forthcoming of the money or other personal chattel at his death, the decree in *Cecil and wife* v. *McFarland* would be construed as an adjudication of the quantity of estate Maria McFarland took in the property. But I do not understand, that it was necessary to determine that question. Whether she took it as tenant for life or absolutely, she was equally entitled to the possession of it; and the decree only directed the administrator to do, what under the law it was his duty to do without decree. I know of no law, which requires a life-tenant to give security for the return of money or other property upon the termination of the life-estate, unless those in remainder or reversion show such special circumstances, as call

for the intervention of a court of equity by bill of *quia timet.*
*Chisholm* v. *Starke,* 3 Call. 25; *Holliday et ux.* v. *Colman,*
2 Munf. 162; *Mortemer* v. *Moffatt et ux.,* 4 H. & M. 503;
*Frazier* v. *Bevil, et al.* 11 Gratt. 9; *Dunbar's ex'rs* v. *Wood-
cock's ex'rs,* 10 Leigh 628; *Weeks* v. *Weeks,* 5 N. H. 326;
*Scott* v. *Price,* 2 Serg. & R. 59.

*Godwin's adm'r* v. *Godwin's adm'r,* 4 Leigh. 410, would
seem to lay down a different doctrine. In that case an admin-
istrator sold certain slaves under the apprehension, that the
proceeds would be necessary to pay debts. It turned out
otherwise, and the question was, what interest the widow took
in the proceeds. If the slaves had not been sold, she would
have been entitled by statute to one third of them for life.
Tucker, Judge, in delivering the opinion of the court held,
that she took a life-estate in one third of the purchase-money.
He uses this language: "The use of the purchase-money for
life is therefore the most proper measure; and whenever her
portion of purchase-money is so paid over to a widow for life,
bond with security should be required of her for paying it over
at her death to the persons entitled in remainder." Judge
Tucker cites no authority in support of his position, that the
widow should be required to give security, draws no distinc-
tion between a life-tenant of money and other personal chat-
tels, so as to take the case out of the general rule, gives no
reason why security should be required, and does not discuss
the question at all.

There is this difference between the cases I have referred to
and *Godwin's adm'r* v. *Godwin's adm'r.* In all of those cases
the life-tenant took under the provisions of a will; in that
case the life-tenant took by force of the law. Whatever im-
portance may be attributed to that difference, and I must con-
fess I can see no difference in principle, upon the ground that
in the case of a will the testator had it in his power to require
security, and his failure to do it was evidence of a personal
trust and confidence, and in the case of a life-tenant by force
of the law there is no personal trust and confidence, it does
not affect the question I am considering. If the effect of Judge
Tucker's decision in *Godwin's adm'r* v. *Godwin's adm'r* is to
hold that a life-tenant of money or other personal chattel is
not entitled to the possession of such money or other chattel,

until bond with security is given for the return of the money or property upon the termination of the life-estate, then I am compelled to dissent from such decision, as contrary both to principle and authority.

I know of no case where it has been held, that a life-tenant can be required to give security for the return of the property, unless some special reasons are assigned, as in *Chisholm* v. *Starke,* 3 Call 25, and *Frazier* v. *Bevil,* 11 Gratt. 9. On the contrary, in *Holliday* v. *Coleman et ux,* 2 Munf. 162 and *Mortimer* v. *Moffatt et ux,* 4 H. & M. 503, the court refused to require security, saying in the latter case: "Yet the court will not rule the tenant for life to give security to have the property forthcoming at his death, unless there appear some danger of its being wasted or put out of the way."

There is no difference between money and any other personal chattel. *Weeks* v. *Weeks,* 5 N. H. 326; *Scott* v. *Price,* 2 Ser. & R. 59; *Dunbar's ex'r* v. *Woodcock's ex'r,* 10 Leigh 628. The fact, that in *Godwin's adm'r* v. *Godwin's adm'r* money was to be paid to the widow instead of other personal property could not have been the ground of the decision of Judge Tucker. In that case the widow was entitled to the slaves. They were converted into money without her assent and under a misapprehension upon the part of the administrator; she should not have been placed in a worse position with regard to the proceeds, than she was with regard to the thing sold.

In *Weeks* v. *Weeks supra,* the court says : "There seems to have been much doubt among judges, what a person having a limited use of personal property bequeathed to him is to do. Some have thought, that the property must be turned into money, and the interest only be paid to the legatee; others have thought this would be a very rigid construction ; and it is now settled, that the tenant for life is to have the possession and is not to be compelled to give security but only to exhibit an inventory."

I think it clearly appears from the authorities and upon principle, that a life-tenant of personal property or money is entitled to the possession thereof and cannot be required to give security for the return of the property or money to those in remainder or reversion as a matter of course, but only as

a matter of sound discretion in the courts to be exercised according to circumstances. I do not think it was necessary in *Cecil et ux.* v. *McFarland* to determine the quantity of estate in the personalty, which Maria McFarland took under the will; nor do I think, that the failure to require from her security for the money paid to her under the decrees can be considered as an indication, that the court intended by those decrees to determine that she took the money absolutely. I am of opinion, that the question, what estate in the personalty Maria McFarland took under the will of her husband, was not adjudicated in *Cecil and wife* v. *McFarland.*

The question then arises: What estate in the personalty did she take under the will? In considering wills the object is to ascertain the intention of the testator, which intention, when once ascertained, must prevail, if not contrary to law. But to arrive at this intention, it is necessary to take the whole will together and not rely upon separate and isolated provisions. There is no rule for construing wills better settled, than that the general intent of the testator, to be gathered from the whole will, must prevail over the particular or special intent expressed in a part of the will, where from the language used it is impracticable to give effect to both the general intent, and the particular or special intent.

Redfield on wills 432 thus expresses the rule: "Where the general-intent of the testator is clear, and it is impracticable to give effect to all the language of the instrument expressive of some particular or special intent, the latter must yield to the former; but every expressed intent of the testator must be carried out, where it can be."

In *Pue* v. *Pue*, 1 Md. Chy. Dec. 382, it was held: "It is the duty of the courts to give effect to every part of a will without change or rejection, provided an effect can be given to it not inconsistent with the general intent of the whole will taken together. When there are two conflicting clauses the principle is, that you are not to disturb the prior devise farther than is absolutely necessary for the purpose of giving effect to posterior qualifying disposition. When a testator uses in one part of his will words having a clear meaning in law and in another part words inconsistent with the former, the first words are to be cancelled and overthrown, only when

the two provisions are totally inconsistent with each other, and where the real intention of the testator cannot be ascertained. It is now fully established, that the general intent of the testator, though first expressed, will overrule the particular intent." In *Pruden* v. *Pruden* 14 Ohio St. 254, the court says: "It is our plain duty to give effect to the whole of this will, and, if necessary to effect this object, the right to restrain or modify the language of one part to make it consistent with another is unquestioned." A clearly manifested intention in one part of a will ought not to yield to a provision of doubtful meaning. *Dawes* v. *Swan et al.,* 4 Mass. 208 ; *Cook* v. *Holmes, et ux,* 11 Mass. 528 ; *Rayfield* v. *Gaines,* 17 Gratt 1 ; *Bell, adm'r* v. *Humphreys,* 8 W. Va. 1.

Applying these principles to the will of James C. McFarland it seems to me evident, that it was the intention of the testator to dispose of his property just as the law would have disposed of it, if he had died intestate, except that he desired to provide legacies to John Welch in trust for the children of Henry D. McFarland, deceased, to Julia Welch, and to Susan Welch contingent upon her marriage, and to provide for her support, if she did not marry. In the first clause of the will the testator provides for the payment of his debts and funeral expenses and the sale of so much of his personal property (except slaves), as will be necessary for those purposes. He then says in the second clause of the will: "The residue of my estate both real and personal after the payment of all my just debts I devise to be divided, as the law prescribes, between my beloved wife and my children, no preferences being made, the children to have an equal share subject however to the following special legacies." It cannot be doubted, that if this provision stood alone, his property both real and personal, so far as his widow and children were concerned, would have been distributed, as if he had died intestate. The widow would have taken a life-interest in the land and slaves and an absolute estate in all his other personal property (Code of Va. ch's 110, 123 §§ 1 and 10 respectively ; and the children would have taken the balance equally between them. The testator seems to have contemplated, that for the payment of his debts, funeral expenses and the special bequests provided for in the second clause of his will his personal estate might

not be sufficient, for he adds: "These several bequests I desire to be paid, if *practicable*, out of my personal estate not including slaves."

But it is claimed, that by the third clause of the will the testator has changed, what would have been the proper and inevitable construction of the will, if the second clause stood alone, by providing in the third clause: "In regard to the division of my estate, whether the same shall consist of realty, stocks or personal property, slaves included, let the whole be appraised, and after providing for the legacies above named, set off one third for my wife during her natural life," &c.; and that his intention was, that his wife should only take a life-estate in the property disposed of by the will, real and personal. It is evident, that the testator intended to dispose of his whole estate, for in both clauses his language is unmistakable on that subject. In the second clause he says: "The residue of my estate, both real and personal;" and in the. third clause he says after enumerating the different kinds of property, real and personal: "Let the whole be appraised." There is no residuary clause to the will; and if it is held, that the widow took only a life-estate in the personalty, and there is no limitation over to any one in remainder, as to that portion of it, which was distributed to the widow for life, he died intestate. Courts will never so construe a will, if it can be avoided, as to create an intestacy, especially by giving to doubtful words or expressions a meaning, which would lead to that result.

The second clause of the will disposed of all the testator's property real and personal, as "the law prescribes," between his wife and children. There is not a single word in the will, which indicates any other purpose, unless the doubtful expression in the third clause, "Set off one-third for my wife during her natural life," can be construed as giving to the wife a less interest than provided for in the second clause. There is nothing in the general purpose of the will to indicate, that the testator intended his wife to take less than the law prescribed. The third clause does not purport to be a devising clause, but only in my view of it points out the mode, by which the property devised in the second shall be distributed between the parties. In summing up all the several

kinds of property, which, he contemplated, would pass under
his will, the testator mentions property, to some of which, dis-
posed of as "the law prescribes," the widow would take a life
estate, to-wit: land and slaves, and as to some of which she
would take an absolute estate; that the testator had chiefly in
his mind the former class of property, may be inferred from
two circumstances: that from the provisions of the will, in
which he directs the legacies to be paid out of his personal
estate not including slaves, if *practicable,* he indicated an ap-
prehension, that after the payment of debts his personal estate
exclusive of slaves  might not be sufficient to pay the legacies;
for if it was, it would certainly have been practicable to pay
the legacies without touching the slaves; second, the mode,
in which he directs the residue of his estate after setting "off
one-third for my wife during her natural life" to be divided;
"the said parts to be drawn for by lot."

While I do not mean to say, that it was necessary that all
the personal property of a decedent, except slaves, is required
to be sold by the administrator, it was certainly the almost
universal custom to do so; and I think from the mode of di-
vision indicated coupled with the fact, that the testator con-
templated a possible deficit in the personalty exclusive of
slaves to pay the legacies, it may be fairly inferred, that his
mind in prescribing the mode of division was principally di-
rected to what was the bulk of his estate, land and negroes.
If so, and knowing, that in such property the 'law prescribed,'
that the widow should take an estate for her natural life, it
was most natural, that he should use those words in referring
to the portion to be 'set off' to her.

Therefore in view of the facts, that the second clause of the
will was the devising clause; that the third clause only pointed
out how the property devised in the second clause was to be
divided between the parties; that the testator had in view in
the third clause chiefly that class of property, in which a
widow took a life-estate; that there is no residuary clause;
that there is no limitation over of the personal estate, which
passed to her under the will; that to construe the words "dur-
ing her natural life" in the third clause as changing and alter-
ing the devise and bequest to her in the second clause, so as
to limit her estate in the personalty to a life-estate, would

create an intestacy as to that estate; that it was the general intent of the testator to dispose of his property between his widow and children as the "law prescribes;" that in the clause where he uses the expression "during her natural life," he refers to two classes of property, in one of which "as the law prescribes" she took an estate "during her natural life," and in the other an absolute estate; I am of opinion, that under the will of James C. McFarland Maria McFarland took a life-estate in the land, and would have also taken a life-estate in the property designated in the will as slaves, had property in slaves existed at his death, and an absolute estate in the personal property other than slaves; and that the decree of the circuit court of Kanawha county must be reversed with costs to the appellant, and the bill of the complainants dismissed with costs.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED.