# CHARLESTON.

## Broderick v. Broderick's Ex'r.

Submitted June 15, 1891.—Decided November 28, 1891.

Construction of Will—Power to Sell Land—Payment of Legacies.

B., by his last will and testament, devised one hundred and forty three acres of land to his brother M., for life, remainder to his two sons. He then gives to his natural son three hundred dollars, and to his nephew two hundred dollars as specific legacies; and directs that said legacies be paid out of his money, if there be sufficient available cash left at the time of his death to pay the same; but, if he did not die possessed of enough money to pay said specific legacies, then he directed that his said brother might pay them, or that said land should be sold, and, after paying said legacies from the proceeds of said sale, he gave the balance to his brother M., and by a subsequent clause of said will the testator directed and commanded that under no circumstances should the said property be sold for less than four thousand dollars; and he further directed that said legacies should not become due and payable unless his brother M. could pay them or said sums could be realized from his available cash at the date of his death, or until the said sum of four thousand dollars could be realized from a sale of said land. *Held*, that the intention of the testator was that under no circumstances should said land be sold by his executor or under the provisions of his will for a sum less than four

thousand dollars, and that said legacies should not be due and payable unless his brother M. paid them, or they were realized from his available cash at the time of his death, or said land brought four thousand dollars under a sale thereof made by his executor or under the directions of his will; and he did not intend that a sale thereof, made under a decree obtained against said estate by one of his creditors for a less sum than four thousand dollars should defeat the payment of said legacies.

*P. J. Crogan* for appellants, cited Jarm. Wills (3d Ed.) 810, 811 (s. p.); 2 Redf. Wills (3d Ed.) 228; Coke Litt. 206 b., 223 a.; 29 Mich. 78; 8 W. Va. 1; 1 Redf. Wills (3d Ed.) 434.

*J. A. Brown* for appellees, cited 18 W. Va. 267; Worth. Wills (60 Law Lib.) 53, 54; 23 W. Va. 36; 28 W. Va. 379.

ENGLISH, JUDGE:

The last will and testament of Lawrence Broderick, who died in the county of Preston, W. Va., was admitted to probate in said county on the 9th day of October, 1878. By the first clause of said will he devised to his brother Michael Broderick, of Allegheny county, Md., a tract of land situated in Preston county, W. Va., containing one hundred and forty three acres, describing the same by metes and bounds, during his life, and upon his death remainder to the two sons of said Michael, to wit, John Francis Broderick and Stephen Broderick; *second*, he gave and bequeathed to Martin Broderick, of Austin, Preston county, W. Va., the sum of three hundred dollars; *third*, he gave and bequeathed unto his nephew Michael Broderick, son of his brother John Broderick, the sum of two hundred dollars; and he desired and directed that, if he did not die seised and possessed of sufficient available cash or money to pay the said specific bequests to the said Martin Broderick and his nephew Michael Broderick, his said brother Michael might pay the said bequests, or that the said described land should be sold, and, after paying said sums to said Martin and his said nephew Michael from the proceeds of said sale, he gave and bequeathed the balance to his said brother Michael Broderick; and he desired and directed

that, if any portion of said balance remained undisposed of by him, or in his possession at the time of his death, it should be given to his two sons, John Francis and Stephen, and he thereby directed and commanded that under no circumstances should the said property be sold for a sum less than four thousand dollars, and provided that, if his said brother Michael could not pay the said sums to the said Martin and his nephew Michael, or if said sums were not realized from his available cash at the date of his death, then the said sums of three hundred and two hundred dollars should not be due and payable unto the said Martin and Michael respectively, until the said sum of four thousand dollars could be realized from a sale of said described property; and his brother Michael Broderick was appointed his sole executor.

On the first Monday of October, 1888, said Martin Broderick and Michael Broderick, to whom said sums were bequeathed, filed their bill in the Circuit Court of Preston county against Michael Broderick, executor of said will, M. H. Murdock, John Francis Broderick, and Stephen Broderick, in which they allege the facts in regard to the death of said Lawrence Broderick, and his ownership of a valuable tract of land in said county; also stating that said Lawrence Boderick, before his death, made a will by which he disposed of his estate, real and personal, and appointed Michael Broderick his executor, who at the death of said Lawrence qualified as such executor, and alleging that under the provisions of said will there was to be paid to the plaintiff Martin Broderick the sum of three hundred dollars, and to the plaintiff Michael Broderick (son of John) the sum of two hundred dollars, and exhibited a copy of said will as part of said bill; also alleging that afterwards a suit in equity was instituted by said Martin Broderick, a creditor of said Lawrence Broderick, deceased, alleging that said Lawrence Boderick in his lifetime was largely indebted to the plaintiff Martin Broderick; that there was no personal fund out of which said debt could be paid; and asking for a decree for said debt, and for the sale of the land mentioned in said last will of Lawrence Broderick; that said suit, after considerable litigation, was decided in favor

of said Martin Broderick, and a sale of said land was decreed to pay said debt; that in said chancery suit the creditors of said Lawrence Broderick were convened, and the cause referred to a commissioner, and it was ascertained by a decree confirming the report of said commissioner that there were no other creditors of said estate, and that there was only a balance of nineteen dollars and twenty cents in the hands of said executor to be applied on the debt of said Martin Broderick, which entire debt, as decreed to said Martin Broderick amounted to the sum of one thousand three hundred and ninety one dollars and ninety five cents, together with all costs and damages; that said farm was duly sold under a decree in said cause on the 24th day of November, 1886, to one Michael Broderick, Jr. (no party to said suit) for the sum of three thousand seven hundred dollars; that said purchaser complied with the terms of sale, and the same was confirmed by a final decree in said cause in 1886, a copy of which decree was exhibited; that after the purchase-money was paid to the commissioner who made the sale, and the debt of said Martin Broderick, together with the costs and interest, had been deducted, there remained a balance of one thousand one hundred and seventy seven dollars and twenty cents as of the 12th day of September, 1888, out of the proceeds of the sale of said land, which sum was duly paid over to the said executor, Michael Broderick, on that day under the directions of the final decree in said cause; that said sum of one thousand one hundred and seventy seven dollars and twenty cents is in the hands of said executor, to be distributed under the provisions of said will, and that the said Martin Broderick is entitled to the sum of three hundred dollars as aforesaid, and the plaintiff Michael Broderick is entitled to the sum of two hundred dollars as aforesaid, with interest on each from the day of said sale, to wit, the 24th day of November, 1886, but that the said executor refuses and declines to pay said legacies; and the plaintiffs allege that, upon a proper construction of the said will, the said executor is liable to the plaintiffs as above stated; and they pray for a decree against said executor and his surety for the sums due them, respectively, as aforesaid.

This bill was demurred to, and the same, upon consideration, was overruled by the court.

The defendants, Michael Broderick, executor as aforesaid, Marcellus H. Murdock, John Francis Broderick, and Stephen Broderick, then filed their answer to said bill, denying that Martin Broderick was to be paid said sum of three hundred dollars, or that Michael Broderick (son of John) was to be paid the sum of two hundred dollars, out of the estate of said Lawrence Broderick, with interest as alleged in the bill, alleging that said amounts were only to be paid to said Martin and Michael on certain conditions, which conditions have not transpired and can not take place; that by the provision of said will it was expressly provided that said farm should not, under any circumstances, be sold for less than four thousand dollars; and that it never has been sold for four thousand dollars, and can not be sold for four thousand dollars at this time or in the future, it having been sold at the instance of said Martin Broderick at forced sale at the price of three thousand seven hundred dollars; and they allege that said testator never intended said legacies should be paid out of said real estate until the respondents, other than said Murdock, had received three thousand five hundred dollars from the proceeds of said farm. They put in issue the material allegations of the bill, and claim that said sum of one thousand one hundred and seventy seven dollars and twenty cents and its interest belong to respondents other than said Murdock, and that said legatees are entitled to have no part of said sum under the provisions of said will.

On the 7th day of December, 1889, a decree was rendered in said cause in which it was held that by the will of Lawrence Broderick said testator intended that his brother Michael Broderick should have an estate for life in the real estate devised, and that the legacies given in said will to the plaintiffs were conditional bequests, which did not and could not attach to or become charges on said realty until the sum of four thousand dollars could be realized out of the sale thereof; and as the said realty sold for but the sum of three thousand seven hundred dollars at the judicial sale in the bill and proceedings mentioned, which sale was

confirmed by the court, the said legacies never became due. and payable, and did not attach as charges on said realty, and therefore can not be paid out of the proceeds or the balance thereof, now in the hands of said executor; that said balance should remain in his possession, to be used by him during his life, and that any portion thereof remaining in his hands undisposed of at his death should go to his said sons, John Francis Broderick and Stephen Broderick; and it further appearing from the pleadings and proofs that the said Lawrence Broderick did not die seised and possessed of sufficient available cash or money to pay the specific bequests to the plaintiffs, and that testator's brother Michael did not then have nor has he now means or property of his own sufficient to pay the said bequests to the plaintiffs: It was ordered that the plaintiffs' bill be dismissed, with costs, and from this decree the plaintiffs obtained this appeal. The error assigned. by the appellants is that the court erred in the construction of said will, in this: that said legacies of three hundred dollars and two hundred dollars, or some part of them, were not decreed to the plaintiffs out of said one thousand one hundred and seventy seven dollars and twenty cents now in the hands of said executor to be distributed under the provisions of said will.

In construing this will we must seek for the intention of the testator on the face of the will itself, and read it in the light of the circumstances surrounding him at the time it was executed. In the case of *Bell's Adm'r* v. *Humphrey,* 8 W. Va. 5, p't. 11 syll., this Court held that "when the general intent of the testator is clear, and it is impracticable to give effect to all the language of the instrument expressive of some particular or special intent, the latter must yield to the former; but every expressed intent of the testator must be carried out when it can be." Also that "a clearly expressed intention in one portion of the will is not to yield to a doubtful construction in any other portion of the instrument."

At the time of the death of Lawrence Broderick, which occurred in 1878, his will having been executed on the 15th of October, 1877, no suit had been brought by said Martin

Broderick to subject said real estate to sale, and, so far as appears from the record, no such suit was contemplated or threatened; and after giving to said Martin Broderick three hundred dollars, and Michael Broderick, son of his brother John, two hundred dollars, he directed that, if he did not die possessed of sufficient available cash or money to pay said specific bequests to the said Martin and Michael Broderick, then his said brother Michael might pay the said bequests, or the said described land should be, sold, and, after paying said sums to said Martin and his nephew Michael from the proceeds of said sale, he bequeathed the balance to his brother Michael Broderick. The testator evidently intended by this clause of his will to charge said legacies, aggregating five hundred dollars, upon said real estate, and after their payment he bequeathed the balance to his brother Michael.

In the first clause of his will he had devised said one hundred and forty three acres of land to his brother Michael for life, remainder to his two sons; but he intended that said specific legacies to Martin Broderick and his nephew Michael be paid, and if he did not leave sufficient money to pay them, and his brother Michael could not raise the money to pay them, and thereby keep the land from going to sale, he says "the said described land shall be sold." How and under what authority? He did not evidently contemplate that said sale should be made under a decree obtained by one of his creditors, but that sale should be made at the instance of his executor, or some one carrying out the provisions and intention of his will, and that the person obtaining a decree to carry out his wishes in reference to said property should not allow it to be sold for less than four thousand dollars.

Something, however, that was not then contemplated happened after the death of the said Lawrence, to wit, a suit was brought by Martin Broderick against said estate; and, although it was bitterly contested both in the Circuit Court and in this Court, the sum of one thousand three hundred and ninety one dollars and ninety five cents, with interest from the 20th day of April, 1882, was ascertained to be due the plaintiff, and in said suit it was also ascer-

tained that said executor only had in his hands, as executor of said Lawrence Broderick's estate, personal assets amounting to nineteen dollars and twenty cents, and in pursuance of a decree rendered in said suit said land was sold for three thousand seven hundred dollars to a person that is no party to this suit.

It is true said testator "directed and commanded that under no circumstances should said property be sold for a sum less than four thousand dollars;" but does not this language clearly import that it was directed towards some person that he would have the power to control by the terms and provisions of the instrument he was executing? He manifestly intended that the sale, if one was necessary, should at least be under the control of his executor; because he certainly must have been aware that his commands and directions would have but little influence in controlling the conduct of any person other than his personal representative in reference to the amount that said land should be sold for; and, again, his will was drawn in the light of our statute (Code c. 86, s. 1) which reads as follows: " Real estate devised to be sold shall, if no person other than the executors be appointed for the purpose, be sold and conveyed * * * by the executors who qualify, or the survivor of them;" and when, in the last clause of his will, he provided that if his said brother Michael could not pay said legacies, or if said sums were not realized from his available cash at the date of his death, then the said sums of three hundred dollars and two hundred dollars should not be due and payable unto the said Martin and Michael, respectively, until the said sum of four thousand dollars could be realized from a sale of said described property, he contemplated a sale of said realty as provided for in his will, under the statute, by his executor, and did not intend that, if the sale was made for the satisfaction of a decree or judgment against his estate by a person whose actions were beyond the control of his executor for a sum less than four thousand dollars, said specific legacies to Martin and Michael should not be due and payable. In speaking of the sum of four thousand dollars being realized, he meant realized by a sale made

under the directions and provisions of his will; and where it was sold by a commissioner under a decree of the court to satisfy a debt against his estate, as it was, and the sale confirmed, it became impossible that said land could be sold as the testator contemplated, or that the sum of four thousand dollars, or any other sum, could be realized as directed by the will.

We come next to inquire how the balance of one thousand one hundred and seventy seven dollars and twenty cents, which came into the hands of said executor after paying the decree of Martin Broderick and costs, including costs of sale, shall be applied; and, by reference to section 3 of chapter 86 of the Code, we find it is provided that "all real estate of any person who may hereafter die, * * * which may remain after satisfying the debts with which it may be so charged or subject to which it may be so devised, shall be assets for the payment of decedent's debts, and all lawful demands against his estate, in the order in which the personal estate of a decedent is directed to be applied;" and by section 17 of chapter 85 we find it provided that, "if the goods so sold be not sufficient to pay the funeral expenses, charges of administration, debts, and legacies, the personal representative shall sell so much of the other goods and chattels as may be necessary to pay the same, having regard to the privilege of specific legacies."

Said surplus then became assets in the hands of the executor, to be applied as directed by the statute; and when we refer again to the language of the will in reference to the payment of debts and legacies, and the sale of real estate for that purpose, it will be observed that the testator, after bequeathing said sums to Martin Broderick and Michael Broderick, not only provides for the payment of said legacies out of his money on hand, if sufficient, but, if the money left was insufficient, he directs that his brother Michael may pay the said bequests, or the said land shall be sold, and, after paying said bequests from the proceeds of said sale, he gave the balance to his brother Michael, and directed that, if any portion of said balance should remain undisposed of at the time of his death, it should go to his

two sons, John Francis and Stephen. So it is manifest that the testator was particularly solicitous that these bequests should be paid, and in designating the means of their payment he first applies his money, if sufficient, to that object; and if that source fails, he then suggests that his brother Michael may pay it, evidently with a view of allowing him to retain the land during his life; and if that is found to be impracticable, he directs the land to be sold, and makes said bequests a primary charge thereon, giving the balance of the proceeds to his brother Michael. There can then be no doubt as to the testator's intention as to the manner in which the proceeds of the sale of said land shall be applied.

If, then, we are correct in our conclusion in the subsequent clause of his will, said testator, in directing that said land should not be sold for less than four thousand dollars, meant and intended a sale by the executor under the directions of his will, or by those beneficially interested, and had no reference to a sale under a decree obtained by a creditor; and while it is true that the real estate mentioned in the will has been sold for less than four thousand dollars, it has not been sold for less than that sum under the provisions of the will, and in execution thereof; it has not been sold by any person whose action the testator could direct or command by the terms of his will; and even if the clause of the will which provides that said specific legacies to Martin and Michael should not be due and payable until the sum of four thousand dollars was realized from a sale of said land is not regarded as repugnant, yet no sale of said land having taken place, under the directions of the will, for a less sum than four thousand dollars, no such sale of said property has taken place as would preclude said Martin and Michael from receiving their legacies out of the proceeds of said sale, said legacies being charges upon said realty, and having priority over the balance which was directed to be paid to his brother Michael.

For these reasons the decree complained of must be reversed, at the costs of the appellees, and this cause is remanded to the Circuit Court of Preston county, with direction that a decree be entered in favor of Martin Brod-

erick for the sum of three hundred dollars, and in favor of Michael Broderick, nephew of said testator, for two hundred dollars, with interest on said respective amounts from the 12th day of September, 1888, when the said sum of one thousand one hundred and seventy seven dollars and twenty cents was paid into the hands of said executor.

HOLT, J., (*dissenting.*)

In October, 1878, Lawrence Broderick, of Preston county, W. Va., departed this life, leaving his last will and testament duly proved and admitted to record, which is in the words and figures following.

"In the name of God, amen. I, Lawrence Broderick, of Preston county, in the state of West Virginia, being in perfect health of body, and of sound and disposing mind, memory and understanding, considering the certainty of death and the uncertainty of the time thereof, and being desirous to settle my worldly affairs, and thereby be better prepared to leave this world when it shall please God to call me hence, do therefore make and publish this, my last will and testament, in manner and form following, that is to say : First and principally, I commit my soul into the hands of Almighty God, and my body to the earth to be decently buried, at the discretion of my executor hereinafter mentioned. After my debts and funeral charges are paid, I devise and bequeath as follows: Item. I give and devise unto Michael Broderick, my brother, of Lonaconing, Allegheny county, state of Maryland, all that tract of land lying in the county of Preston and state of West Virginia, on the waters of Raccoon creek, and bounded as follows, to wit : Beginning at a small hickory; thence west 122 poles to a heap of stones ; thence south 59 poles to a small gum, corner to the seven acre tract sold to Hugh Shay ; then, with the line of said tract, east 20 poles to a small dogwood ; then south 56 poles to a heap of stones ; thence south 74 poles to a heap of stones ; then, with Blackwood's line, east 122 poles to a small beech ; then north 190 poles to a small hickory, the place of beginning—containing one hundred and forty three acres of land, more or less—being the same tract of land which was conveyed to me by Abraham Horseman

and wife by deed dated the fourth day of April, A. D. 1857, and recorded among the land records of said Preston county, in Book No. 13, page 357, and after the destruction of the court house recorded anew in Book 32, page 449 and 50— during his natural life, and upon his death I give and devise the said property to his two sons, John Francis Broderick and Stephen Broderick, their heirs and assigns, in fee simple forever. Item. I give and bequeath unto Martin Broderick, of Austin, Preston county, West Virginia, the sum of three hundred dollars. Item. I give and bequeath unto my nephew Michael Broderick, son of my brother John Broderick, the sum of two hundred dollars. And I desire and direct that if I do not die seised and possessed of sufficient available cash or money to pay the said specific bequests to the said Martin Broderick and my nephew Michael Broderick, then my said brother Michael may pay the said bequests, or the said described land shall be sold, and after paying said sums to said Martin and my said nephew Michael from the proceeds of said sale, I give and bequeath the balance to my said brother Michael Broderick. And I desire and direct that, if any portion of said balance remain undisposed of by him, or in his possession, at the time of his death, it shall be given to his two said sons, John Francis and Stephen. And I hereby direct and command that under no circumstances shall the said property be sold for a sum less than four thousand dollars. And if my said brother Michael can not pay the said sums to the said Martin and my nephew Michael, or if said sums are not realized from my available cash at the date of my death, then the said sums of three hundred and two hundred dollars shall not be due and payable unto the said Martin and Michael, respectively, until the said sum of four thousand dollars can be realized from a sale of said described property. And I hereby constitute and appoint my said brother Michael Broderick to be the sole executor of this my last will and testament, revoking and annulling all former wills by me heretofore made, particularly the one dated September the 23d, 1872, ratifying this and none other to be my last will and testament. In testimony thereof I hereto set my hand and seal this fifteenth day of October, in the year of our

Lord eighteen hundred and seventy seven, at Lonaconing,
Allegheny county, Maryland.

"LAWRENCE <sup>his</sup> X <sub>mark</sub> BRODERICK. [Seal.]"

By this will of Lawrence Broderick, as well as by the
law, were first to be paid his funeral expenses and his debts.
He owned the Horseman tract of land of one hundred and
forty three acres. The prime object of the testator's bounty
as to three thousand four hundred dollars worth of this
land was his brother Michael, and to this gift (or, perhaps,
unexpressed payment) to the brother, the subordination of
the bequest of three hundred dollars to Martin Broderick and
of two hundred dollars to his nephew Michael Broderick
is emphasized in language the most positive and command-
ing, and runs through the will persistently, from begin-
ning to end. First, as to land, his brother Michael was to
take it for life, remainder in fee to Michael's two sons, John
Francis and Stephen. Then he gives unto Martin Broder-
ick the sum of three hundred dollars, and to his nephew
Michael Broderick the sum of two hundred dollars, to be
paid after testator's death out of the avaible cash or money,
if he then have a sufficiency for that purpose; but if the
testator should then, after the payment of debts, not have
sufficient personal property for that purpose, then his bro-
ther Michael, if he can do so, is to keep the land (there
being no occasion to sell) and pay these two legacies; or
the land shall be sold, in the event, and only in the event,
that it can be sold for four thousand dollars, at the least; and,
after paying out of the proceeds of such sale said bequests to
Martin and the nephew Michael, he gives and bequeaths the
balance to his brother Michael, the balance (now personalty)
in absolute ownership (by construction of law;) but desires
and directs that, if any portion of said balance remain undis-
posed of at the time of his death, it shall be given to the
said two sons, John Francis and Stephen; but (he adds
with emphasis:) "I hereby direct and command that under
no circumstances shall the said property be sold for a sum
less than four thousand dollars." Why? Because he still
had in view his brother Michael as the prime object of his
bounty, so far as the land was concerned, and to the extent

of three thousand five hundred dollars worth, in priority to the two legacies in any contingency and under all circumstances, which intent might otherwise be thwarted, and then to make such priority plainer and stronger, and such subordination of the legacies more emphatic, he goes on: "But" (and) "if my said brother Michael can not pay the said sums to the said Martin and my nephew Michael, or if said sums are not realized from my available cash at the date of my death, then, in that event, the said sums of three hundred and two hundred dollars shall not be due and payable to the said Martin and Michael, respectively, until (and unless) the said sum of four thousand dollars can be realized from the said described property;" thus again emphasizing his commanding intent, that these two legatees shall in no event have anything out of the land or its proceeds until his brother Michael shall have received out of or in the same, as money, or as land, three thousand five hundred dollars, or three thousand five hundred dollars worth, at the least.

We do not go forward to facts and circumstances not in any wise contemplated, because not anticipated or foreseen, but confessedly unexpected, for light on the testator's then present motives and intent, if any such thing could in any event control so emphatic an expression in the will itself of the priority of the one and the subordination of the other. That such was the intent of the testator is, in my view, made reasonably manifest upon the face of the will, read as a whole; and I have been unable thus far to find or to see anything reflected upon it from the surrounding circumstances to indicate or justify a different construction; so that, with the modification of giving the one thousand one hundred and seventy seven dollars and twenty cents to Michael, the brother in absolute ownership, I am for affirming the decree.

REVERSED. REMANDED.