# CHARLESTON

HOPE NATURAL GAS CO. v. SHRIVER *et als.*

Submitted November 24, 1914.    Decided December 22, 1914.

1. WILLS—*Construction—General Terms.*

General, indefinite and collective terms in a well, following defined and specific dispositions of property therein previously made and pertaining to them, are controled by the context and, for their true meaning, referred to their proper places, subjects and connections, under the rule usually expressed by the phrase, *Reddendo singula singulis.* (p. 408).

2. SAME—*Construction—Intent.*

The general intent of a testator, clearly and definitely expressed

in his will, prevails over particular or special intent expressed in a part of it, if it is impossible to give effect to both the general and the particular or special intent.   (p. 408).

3. SAME—*Codicil—Construction.*

   A will and a codicil appended thereto and containing no words of revocation are to be read and considered together and interpreted as a single instrument, under the rules governing the interpretation of wills.   (p. 412).

4. SAME.

   Such a codicil may be amendatory of the will or merely declarative, interpretive or explanatory.   (p. 412).

5. SAME.

   Though a presumption of purpose to effect something arises from the execution of a codicil or insertion of a clause in a will, failure of accomplishment of the apparent purpose thereof, by reason of indefiniteness of the terms used, neither requires nor justifies modification or limitation of other specific and definite provisions of the instrument, to the end that such codicil or clause may have some legal effect.   (p. 413).

6. REMAINDERS—*Validity—Want of Supporting Estate.*

   A contingent remainder does not in any case fail for want of a particular estate to support it.  Code, ch. 71, sec. 12, serial sec. 3750. (p. 414).

7. APPEAL AND ERROR—*Costs—Decree—Striking Unwarranted Matter.*

   Matter in a decree, beyond the scope of the pleadings and, therefore, not warranted, is stricken out on appeal, but no costs are allowed on account thereof, if its elimination was not requested in the court below.   (p. 414).

8. COSTS—*Appeal—Modification of Decree.*

   On the affirmance of such a decree, after modification, costs are awarded to the appellees as the parties substantially prevailing in the appellate court.   (p. 414).

   (ROBINSON and WILLIAMS, JUDGES, dissenting.)

Appeal from Circuit Court, Monongalia County.

Bill in the nature of, a bill of interpleader by the Hope Natural Gas Company against Henry D. Shriver and others, for construction of a will.  From a decree for Martha Virginia Taylor, Henry D. Shriver and others appealed.

*Modified and affirmed.*

*Moreland, Moreland & Guy* and *Cox & Baker,* for appellants.

*W. S. Meredith,* and *Russell & Russell,* for appellee.

POFFENBARGER, JUDGE:

The decree complained of on this appeal was pronounced on a bill in the nature of a bill of interpleader, filed by the holder of leases on valuable gas lands, praying a construction of the will and codicil of Solomon H. Shriver, the lessor, who died testate, after the lands had been developed and were yielding large gas rentals. At the time of the institution of the suit, the operator under the leases held, for distribution, only $750.00 of rentals; but the properties involved are likely to yield them to the extent of many thousands of dollars. Devisees whose contentions as to the construction of the will were overruled in the decree have appealed from it.

The will was executed, Jany. 12, 1906, and the codicil, Apr. 22, 1907. Being childless, the testator bestowed his estate upon his nephews, Leroy R. Taylor and Henry D. Shriver, the latter of whom he described as his adopted son, and their children. His widow for whom no provision was made in the will and who seems never to have claimed any of the estate, being now dead, the devisees under the will are the only interested persons.

After having provided for payment of his debts and funeral expenses and cost of administration, the testator made the following disposition of his estate: "It is my will that after payment of all debts &c, as provided in the first clause of my will, then all my estate both real and personal shall be taken and held for life by my nephew Leroy R. Taylor and my adopted son Henry D. Shriver in equal portions, that is to say one half thereof shall go for life to the said Leroy R. Taylor for life and the other half to the said Henry D. Shriver for life. At the death of the said Henry D. Shriver the share of my estate hereby willed and devised to him shall go to his children share and share alike. At the death of the said Leroy R. Taylor the share of my estate hereby willed and devised to him for life shall go to his children if he shall leave a child or children. But if said Leroy R. Taylor shall die without children and the said Henry D. Shriver shall survive him then the share of my estate so

willed and devised to said Leroy R. Taylor for his life shall go to the said Henry D. Shriver to be taken and held by him along with the estate above willed to him for life the whole to be held by him for and during his lifetime and then to his children, share and share alike.

It is my will that my real estate shall not be sold until after the death of the said Leroy R. Taylor and Henry D. Shriver, but it shall be held by them in manner and form as above and at their deaths respectfully shall descend and pass as above herein provided to their children.

And I hereby will, devise and bequeath all my estate of which I may die seized or possessed as above."

Formal parts omitted, the codicil reads as follows: "I Solomon H. Shriver of Wadestown, W. Va. do hereby make this my first codicil to my last will and testament, which last will bears date on the 12th day of January, 1906, and is on the same sheet of paper on which this codicil is written. This Codicil to said will is as follows that is to say: Since my said will was made my said nephew Leroy Taylor has had a child born unto him and it is now my will that my estate willed and devised to him and my said nephew Henry D. Shriver shall after my decease be taken and held by them for life and then to their children in manner and form as the same is in and by said will devised and bequeathed, except that after the death of both the said Leroy Taylor and Henry D. Shriver, then all of said estate real and personal shall go to the children of said Leroy Taylor and Henry D. Shriver per capita, or share and share alike, the real estate in fee and the personalty absolutely. In all other respects my said last will and testament is to stand and the same is hereby reaffirmed, as and for my last will except only in so far as the same is herein and hereby changed and altered."

At the date of the will, Leroy Taylor had no children, but a child, Martha Virginia Taylor, was born to him, March 16, 1907. Henry D. Shriver had children at the date of the will, and now has five. Leroy Taylor died, Oct. 11, 1910, and the testator, Oct. 30, 1912, without issue. He had taken Leroy Taylor and Henry D. Shriver into his family in their infancy, and reared them to manhood, but never adopetd either of them in the manner prescribed by the statute. The

approximate value of his estate, at the time of his death, was $300,000.00. The $750.00 of rental money in the hands of the lessee, at the date of the filing of its bill, was one half of the accumulated rentals, the other half having been paid to Henry D. Shriver. Upon his claim of title to the remaining half and a like claim of the infant daughter of Leroy Taylor thereto, the lessee refused payment to either, until the right to it should be judicially determined, and brought this suit for that purpose, as well as to determine the question of title to future rentals to arise under the leases. By its decree, the court awarded the $750.00 to Martha Virginia Taylor and adjudged and decreed that she took the title to one-half of all of the estate of which Solomon H. Shriver died seized and possessed, both real and personal.

In behalf of Henry D. Shriver, the doctrine of survivorship is invoked. The will and codicil are interpreted as having vested in Leroy Taylor and Henry D. Shriver a joint estate for their lives. If this assumption is well founded, he must prevail and the decree is wrong. But the will, unaided by the codicil, manifestly did not create such an estate. It gave each of them an estate for life in one-half of the estate and then expressly provided, as to the half given Leroy Taylor, that, at his death, it should go to his child or children if any he should have; and, as to the other half given to Henry D. Shriver, that, at his death, it should go to his children. Though it did, in the first instance, give the whole estate to Taylor and Shriver for life, the gift was immediately qualified and explained thus: "that is to say one half thereof shall go to the said Leroy R. Taylor for life and the other half to the said Henry D. Shriver for life." Such a gift so explained and limited does not create a joint estate. 2 Min. Inst. 401; Bla. Com. 180n; *Hoxton* v. *Griffith,* 18 Gratt. 574. This explanatory matter is not eliminated or nullified by any subsepuent provision of the original will. On the contrary, it is reaffirmed, in the clause inhibiting sale of the property, until after the death of both life tenants, in these words: "it shall be held by them in manner and form as above and at their deaths respectively shall descend and pass as above herein provided to their children."

The codicil, however, is the principal substructure of the

argument.  It recites the birth of Taylor's child and then repeatedly reaffirms the will in general, but makes this exception: "after the death of both the said Leroy Taylor and Henry D. Shriver, then all of said estate real and personal shall go to the children of said Leroy Taylor and Henry D. Shriver per capita, or share and share alike, the real estate in fee and the personalty absolute."

Whatever the effect of this codicil may be, the occasion of the making thereof is perfectly clear.  It was made slightly more than one month after the birth of Leroy Taylor's child and recites the circumstance as the cause moving the execution thereof.  This child had been provided for in the original will and would have taken, under it, just what the decree complained of has given her.  It had discriminated against Taylor presumably, because at the date thereof, he was childless.  A remainder for life in his share of the estate was given to Shriver, in the event of his death without children; but no such remainder in Shriver's share was given to him, in the event of Shriver's death without children.  If, after the birth of the child, he had let his will alone, ample provision would have been made for her.  Having recited her birth, as the occasion of the alteration in his will, he did not withhold his estate from her, but, on the contrary, still provided for her, making her interest, however, less certain and definite, to say the least of it, than it was before.  Under one theory of interpretation, she would get nothing, until after the death of Henry Shriver which may not occur for many years, and then possibly only one-sixth of the estate, or even less, after the gas wells, constituting its chief value, shall have been exhausted.  This child for whose welfare the testator manifested solicitude would be left wholly without support, just at the time of life in which it is most essential, the tender years of childhood, a period of utter helplessness; the period of growth and development, physicial, mental and moral, the age in which the basis of character is laid.  The two men for whom provision was made were both nephews of the testator.  Each had been reared from infancy by him.  They were, in actual relation and affection, his adopted sons, not one more than the other.  In their circumstances, at the date of the will, they differed in only one substantial respect.

One had children and the other had not. Accordingly, he provided for extension of the life estate of the former to the interest given the other, in the event of his death without children, and gave the fee of the whole estate in remainder to the children. The new circumstances incident to the birth of the Taylor child altered his case, and he caused a codicil to be prepared and executed it.

In the execution of these papers, both the will and the codicil, two things seem to have burdened the testator's mind as weighty and determining factors, controling his dispositions, children and deaths terminating the estates for life. The tenor and substance of each paper bespeak equal enshrinement of the adopted sons in the testator's heart. Clearly his dispositions are not affected by any difference in sentiment or affection toward them. In the original will, only one slight difference was made, and that for a plain and good reason. He did not want to die inestate as to the fee simple title to one-half of his estate. So he gave it contingently to Shriver for life and then to his children in fee. Perceiving no danger of his intestacy as to the other half, in view of the existence of the Shriver children, he made no provision for such contingency as to it. There he rested on the presumption in favor of life. On the birth of the Taylor child, he executed a codicil in which the same presumption seems to have been a controling factor. Seeing no further contingency, he, at least, apparently eliminated the provision he had made for one and declared the estate should go to the children, "the real estate in fee and the personalty absolutely".

Thus far, the intention seems to be clear, but it is obscured, to say the least, by the phrase "after the death of both the said Leroy Taylor and Henry D. Shriver" and the declaration, "then all of said estate real and personal shall go to the children of said Leroy Taylor and Henry D. Shriver per capita, or share and share a like." His original will did not contemplate coincident deaths of the life tenants. On the contrary, it assumed their more probable deaths at different times, necessitating a choice between alternatives, termination of the life estate in each moiety, by the death of the tenant, a gift over of that life estate to the other tenant, postponing the right of possession in the remaindermen until

both should be dead, or leaving a break or hiatus in the right of possession as to one-half of the estate. Accordingly, he made his choice and terminated the life estate in each case, by the death of the life tenant, provided Taylor should leave a child or children, assuming that Shriver would do so, because he then had children. Postponement until the death of both, without any specific provision as to the life estate, during the period between the deaths of the life tenants, would work a most radical change in the original plan of disposition, and a most disastrous one to the remaindermen. Taylor's child would get nothing, until after the death of Shriver, and if Shriver had died first, his children would have gotten nothing, until after the death of Taylor. If he really meant to postpone the vesting of the remainders in fee in possession until the death of both life tenants, whether coincident or not, it is strange that he made no provision for the protection or support and maintenance of the children, during the long period which might intervene between the two deaths. On this subject, the codicil speaks not a word. Whether he intended them to remain without support from his estate, during such period, he does not say in express terms. Only a negative inference arises from what he did say, and that is directly contradictory of the plain provision on that subject, incorporated in the original instrument, made when he had it in mind and definitely expressed his will about it.

If the terms of the exception are susceptible of an interpretation accordant with the general intent expressed in the original will, as to provision for the Taylor child, such interpretation must be adopted, though they are susceptible of another variant from such plan; for, in that case, it would be uncertain or doubtful, and, for that reason, not permitted to defeat a devise or bequest previously given in clear and unequivocal terms. *Generalis clausala non porrigitur ad ea quae antea specialiter sunt comprehensa. Martin* v. *Martin,* 52 W. Va. 381; *LeSage* v. *LeSage,* 52 W. Va. 323; *Smith* v. *Schlegel,* 51 W. Va. 245; *Bartlett* v. *Patton,* 33 W. Va. 71; *Broderick* v. *Broderick,* 35 W. Va. 620; *Houser* v. *Ruffner,* 18 W. Va. 244.

Read in connection with the repeated reaffirmations of the

original will, which reflect light on the exception itself, it may mean that "all of said estate real and personal," given to Taylor, shall go to his child or children, on his death; and "all of said estate real and personal," given to Shriver, shall go to his children at his death. In a broad sense, this would be a disposition of all of the estate after the death of both. A rule of construction sanctions reference of words general in their terms, such as those of the exception, to their places, subjects or connections as shown by other words or provisions in the context. It is briefly and tersely expressed by the latin phrase, *"Reddendo singula singulis,* literally translated, "By referring each to each: or referring each phrase or expression to its appropriate object," 34 Cyc. 765. The dispositions made by the original will, reaffirmed in the codicil, are definite and specific. Division of the estate into two equal parts is made, and each separate part disposed of as an entity in clear and concise terms. Taylor and Shriver are separately, distributively, dealt with. But, in the codicil, the terms are all general and collective throughout. It deals with the life tenants and their children collectively, saying "it is now my will that my estate willed and devised to him (Taylor) and my said nephew Henry D. Shriver shall after my decease be taken and held by them for life and then to their children in manner and form as the same is in and by said will devised and bequeathed, except" etc. Though he had not given Taylor and Shriver a joint estate, the collective terms here used describe the several gifts as if they had been one. Then there is a like misdescription of the separate remainders in fee given to the two sets of children. Under the will referred to, they did not take jointly. To ascertain the intent of this part of the codicil, the general terms must be referred to the specific provisions of the will. The use of general terms, thus begun, continues into the exception which deals collectively with the deaths of the life tenants, terminating the life estates, and the remainders. The rule just mentioned both sanctions and requires distribution or reference of the subjects of these collective, general and, therefore, indefinite, expressions. They are controled by their context, the provisions of the original will, emphatically and repeatedly referred to and reaffirmed. So distributed,

they leave those provisions unchanged except to the extent of the abolition of the express limitation of a contingent remainder for life in Henry D. Shriver. ''After the death of both'' means after the death of each, as the deaths may occur. ''All of said estate real and personal'' means all of what he had given each of the life tenants, one-half of the entire estate. ''Shall go to the children of said Leroy Taylor and Henry D.. Shriver per capita, or share and share alike'' means that, as each of the life tenants dies, the half given to him for life shall go to his children per capita, or share and share alike, as he had formerly provided, as to the children of Shriver, when with his mind on the subject of division of the whole estate between the two possible sets of children, he had definitely and emphatically expressed his will as to it. He had said the Shriver children should take, in remainder, one-half the estate share and share alike.

Though less frequently applicable and used than some others, this rule embodies reason and common sense. It recognizes and allows for the convenient use of general, indefinite and loose terms applicable to things not requiring definite specification or discrimination, because the meaning is obvious without it from their nature, or from their having been previously made definite and certain, or from being subsequently made so in the instrument. A command or direction to go to London by rail and steamer would not be understood as requiring the use of both railroad and steamer at the same time and on the same portions of the route. The order would be interpreted and acted upon, *Reddendo singula singulis*. In execution thereof, the railroad would be employed to New York, the steamer from New York to Liverpool and the railroad again from Liverpool to London. An order to attack a hostile country by land and sea would not be construed as requiring the army to attack by or from the sea nor the navy to attack by or from the land, but, *Reddendo singula singulis,* the army by land and the navy by sea. A statute of this state directs sheriffs to sell delinquent tracts of land by tracts or separate parts of tracts and delinquent town lots by lots or undivided parts of lots. By a subsequent section, the purchaser is required to have the quantity or undivided interest so purchased, surveyed and laid off at

his expense, as a condition precedent to the acquisition of his deed. It was claimed this language required the purchaser of an undivided interest in a town lot to have the lot partitioned before he could get his deed. But the court, applying this rule, held the words, "laid off", must be referred and limited to tracts and parts of tracts, the only subjects of purchase the legislature intended should be laid off, and not applied to purchases of undivided interests in town lots at all. *Building & Loan Assin.* v. *Sohn.* 54 W. Va. 101. For mere convenience and avoidance of useless repetition, the legislature had made "surveyed and laid off" literally applicable to both classes of purchases, just as men, in ordinary conversation, correspondence and contracts, make use of general and indefinite terms, which must be separated and distributed to arrive at their real meaning. The things so dealt with are regarded as being so plain as not to require repetition. A statute empowering cities and villages to make local improvements "by special assessments or by special taxation, or both," was construed as not authorizing combination of the two methods in the making of one improvement, but as authorizing separate and distinct improvements by both methods, each by one of the methods prescribed. *Kuehner* v. *Freeport,* 143 Ill. 92.

The rule permitting and requiring such analysis is not limited to the construction of statutes. Chancellor Kent resorted to it, in seeking the intent expressed in a contract. *Ludlow* v. *Bowne,* 1 Johns, (N. Y.), 13 Am. Dec. 277, 289. Wills also fall under its influence. *Akers' Ex'rs.* v. *Akers.* 23 N. J. Eq. 26, 31; *Hayes* v. *King,* 37 N. J. Eq. 1, 2; *Forster* v. *Civill et als.,* 20 Hun. 282; *Thornton* v. *Thornton,* L. R. 20 Eq. 599, 604.

Such interpretation subjects general expressions of words plainly susceptible of definition or obviously lacking it, because obscure, to the controling influence of the context, a process or method of analysis widely recognized and adopted by the courts. A gift of the testators "effects" *prima facie* carries all of his personal estate, but the context may limit its meaning. Page, Wills, 478. "Furniture" does not *prima facie* include certain articles, but the context may so enlarge its meaning as to make it carry them. *Id.* 492. A gift of

corporate stocks to the extent of a specified amount, contemplates a gift thereof at their par value, but the context may require a different basis of computation. *Id.* 497. *Prima facie,* a bequest of a fund or security carries interest on it accrued at the testators death, but the context may take it out of the general rule. *Id.* 499. Page gives other instance of context domination and variation at secs, 514, 523, 524, 525, 526, 528, 529, 531, 532, 546, and 676. Words in a will having a technical meaning, are presumed to have been employed in their technical sense, but the context may show the contrary. Jarman, Wills, 6th Ed. p. 2210. Words repeated in a will are presumed always to have been used in the same sense, but the context may determine otherwise. *Id.* 2210.

These rules of interpretation apply to the codicil just as effectually as if its terms and provisions had been inserted in the original will. It is by no means a new will. A codicil, not revoking the original will, is a mere addition to it, which may, or may not, substantially alter its provisions. It is merely amendatory or explanatory of the original paper. If it partially revokes the will, by express provision or necessary implication, it is amendatory; but it may be merely explanatory. Jarman, Wills, 6th Ed. 629. "Where a codicil is appended to a will and does not contain any clause of revocation, the provisions of the will are to be distributed only as far as are absolutely necessary to give effect to the provisions of the codicil; and in other respects such will and codicil are to be construed together," Page Wills, 462. In such cases, the two papers constitute the will and are read together and interpreted, under the rules of interpretation, as a single instrument. Bouv. Law Dict., title "Codicil," citing numerous authorities.

The making of the codicil implies some purpose on the part of the testator respecting his estate or previous dispositions thereof, of course, but not necessarily, intent to alter them; for he may have intended merely to explain the paper first executed. "It appears to us that the argument with respect to the effect of the codicil, when rightly considered, is not that the will is at all revoked or varied by the codicil; but, rather, that, the will and the codicil being all

one testament, the language of the will may be interpreted by that of the codicil''. *Darley* v. *Martin,* 13 C. B. 683, 691. To the same general effect, see *Hartley* v. *Teibber*, 16 Beav. 510, *In re Venn.* (1904) 2 Ch. 52, 56, and Beal. Card. R. L. Int, 505, 587. As the codicil may have been made only for the purpose of explanation, the assumption of intent to effect a radical or substantial alteration of the will is obviously not well founded and cannot be allowed the weighty force claimed for it in the argument. And, if, treated as having been intended for explanatory matter the exception in the codicil, by reason of its inaccurate description of gifts already made, or its lack of certainty, fails to accomplish its purpose and, therefore, avails nothing, it merely takes its place among numerous other abortive attempts, disclosed by the history of our jurisprudence, to accomplish the like purpose, by insertion of indefinite clauses in wills and codicils. *Skerratt* v. *Oakley,* 7. T. R. 492; *Smith* v. *Fitzgerald*, 3 V. & B. 2; *Philips* v. *Champerlaine,* 4· Vers. 51; Jarman, Wills, 6th Ed. 628.

A good illustration of it is found in *Houser* v. *Ruffner*, 18 W. Va. 244. In that case, no codicil was involved; but, as has been shown, a codicil, containing no clause of revocation, is, in law, merely an additional clause of the will. By the second clause of the will, the testator gave his wife such interest in all of his property, as the law would have given her, in the absence of a will. That was a life estate in all the land and slaves and absolute ownership of all the other personal estate, under the provisions of the Virginia Code, chs. 110, 123, secs. 1 and 10 respectively, as it then was. By the third clause of the will, he directed appraisement of his whole estate, the assignment of one-third thereof, after payment of some legacies, to his wife and division of the residue among his children. The court denied any effect to said third clause. inconsistent with the second, and adjudged the widow to be entitled to a life estate in all the land and slaves and to absolute ownership of the other personal property. The reasons for the decision in the cause, made apparent by principles already stated and authorities cited, need not be repeated here.

The testator's knowledge of the ambulatory character of

his will, its susceptibility to change by his own act, during his life, and his purpose to change it, from time to time, so as to make it conform to the altered circumstances of the objects of his bounty, are readily collectible from his conduct. At first he made only a contingent provision for Taylor's child, because he then had none. The provision for Shriver's children was not contingent, because they were in existence. After the birth of Taylor's child, he made the provision for her absolute, unless the exception in the codicil manifests intent virtually to destroy the provision already made for her. The death of Taylor did not move him to any further alteration of the language of the will, because death had removed one of the objects of his bounty and vested in the child the full estate intended for her. Had she predeceased the testator, the will would no doubt have been altered again. Whether his omission to alter it under that state of facts, would have left in force the provision in the will, as originally executed for a contingent life estate in Shriver, as to the Taylor half of the estate, and a remainder in fee therein to his children, need not be determined. Annihilation thereof was one clear purpose of the exception in the codicil, but the words used therein may not have been sufficiently definite to accomplish it. That purpose, whether actually effected or not, moved the execution of the codicil, and its failure, if any, does not extend the scope of the codicil. Its fate is the same as that of other abortive clauses in wills.

By reason of the death of Taylor before that of the testator, which prevented the vesting in him of the life estate, the remainder in fee to his child might be void, under common law principles, 2 Min. Inst., 434-5, 1 Lomax Dig. 570-1, but, if so, it is good under the statute, sec. 11, ch. 71, Code, serial sec. 3750, saying "A contingent remainder shall in no case fail for want of a particular estate to support it."

The decree goes far beyond the scope of the bill, which embraced only the rentals and royalties, and adjudges to Martha Virginia Taylor title to one-half of the entire estate, real and personal, and the right to have partition of the real estate. In this respect only, it is erroneous. *Buskirk* v. *Ragland,* 65 W. Va. 749; *McDonald* v. *Jarvis,* 64 W. Va. 62; *Martin* v. *Martin,* 52 W. Va. 381. Modification of it by

elimination of that part will not, however, carry any cost to the appellants, since no request for such modification was made in the court below.  *Newton* v. *Kemper,* 66 W. Va. 130; *Teter* v. *Teter,* 65 W. Va. 167; *Frye* v. *Miley,* 54 W. Va. 324.  Nor can it prevent an award of costs in this court to the appellees, since they prevail on the only real issue decided here.

Upon the principles and conclusions stated, the decree will be modified as indicated, and, as so modified, affirmed.

*Modified and affirmed.*

WILLIAMS, JUDGE *(dissenting)* :

Testator's intention is the guiding star in the construction of his will, and when it is clearly expressed there is no occasion, or authority in law, to resort to legal presumptions and technical rules of construction.  They are intended to guide the court in ascertaining his intention when the testator has obscured it by using terms of doubtful meaning or by making inconsistent provisions.  Rules of construction must yield to clearly expressed intention.  *Couch* v. *Eastham,* 29 W. Va. 784; *Cresap* v. *Cresap,* 34 W. Va. 310; *Couch* v. *Estham,* 69 W. Va. 710; *Hinton* v. *Milburn's Ex'rs.,* 23 W. Va. 166; *Tebbs* v. *Duval,* 17 Grat. 349.  When the intention is clearly expressed all the courts can do is to give effect to it, unless to do so would violate some positive rule of law.  In the present case the testator's intention is clearly expressed.  The difficulty is one of the court's own making, and grows out of the impossible task, which it has undertaken to perform, of trying to harmonize repugnant provisions contained in the will and the codicil, respectively.  That repugnancy was designedly made for the purpose of altering or changing the will, and testator never intended the codicil to harmonize in all respects with the will.  The repugnancy was one of design and not of accident.  Testator made his codicil to alter his will in material respects, and not simply to reaffirm it, although he did expressly reaffirm it in part.  Led by a charitable desire to provide for a contingency, against which testator himself did not provide, the majority of the court have lost sight of the guiding star of testator's intention, and in their effort to produce harmony, where he intended there should be conflict, they have violated one of

the most fundamental of all rules for the interpretation of wills, by giving full effect to testator's first will instead of to his codicil which is his last will. It is a cardinal rule of construction, where there is repugnancy between a will and a codicil, that the latter must prevail over the former. The codicil is testator's last expression and, therefore, his last will. *Carpenter* v. *Miller's Ex'rs.*, 3 W. Va. 174; *Houser* v. *Ruffner*, 18 W. Va. 244; *Furbee* v. *Furbee*, 49 W. Va. 191; *Hove* v. *Hove*, 13 Grat. 345; 1 Jarman on Wills, 174 and 177; and 2 Minor's Inst. (2nd ed.) 954. That rule applies, of course, only where there is irreconcilable conflict between the two, which is the case here. A subsequent, inconsistent disposition of property, previously devised, is an implied revocation *pro tanto.* 30 A. & E. E. L. (2nd ed.) 664; and 1 Jarman on Wills, 175. When repugnancy exists no words of revocation are necessary. 6 A. & E. E. L., (2nd. ed.), 186, and numerous cases cited in note; 40 Cyc. 1175. In *Dawson* v. *Dawson's Ex'r.*, 10 Leigh 602, Judge Tucker says: "It cannot be denied, that so far as the codicil contains a disposition of the testator's property, the will must yield, although the codicil contains no clause of revocation. But, I take it, the codicil is to be considered a revocation to that extent only; for a codicil (so expressed to be upon its face) is designed to be a part of the will already made, and not a new and independent instrument. It may add to, take from, or modify and restrain, the disposition of the will, but so far as the will can stand consistently with the codicil, so far it is unrevoked by it, unless there be an express revocation." I know of no exception to this rule. I do not controvert the proposition, that both the will and codicil should be read together, and the two harmonized for the purpose of trying to arrive at testator's intention. But the rule has no application when it clearly appears that the codicil was intended to alter or modify the will. In such case the will must be sacrificed, so far as is necessary to give effect to the codicil, otherwise testator's last will is defeated. The rule is sometimes thus stated: "The construction should, if possible, satisfy all the words of the codicil and be consistent with the scheme of the will." 6 A. & E. E. L. 183.

That testator intended his codicil to effect a change in the

will, and, therefore, necessarily to conflict with it, I think
is too clear to admit of argument. Reciting the fact that a
child had been born to Leroy Taylor since making his will,
as an inducement for making the codicil thereto, he says:
"it is now my will that my estate willed and devised to him
(Leroy Taylor) and my said nephew Henry D. Shriver shall
after my decease be taken and held by them for life and
then to their children in manner and form as the same is
in and by said will devised and bequeathed, *except that after
the death of both the said Leroy Taylor and Henry D.
Shriver, then* all of said estate real and personal shall go to
the *children of said Leroy Taylor and Henry D. Shriver per
capita, or share and share alike,* the real estate in fee and the
personalty absolutely. *In all other respects* my said last will
and testament is to stand and the same is hereby reaffirmed,
as and for my last will *except only in so far as the same is
herein and hereby changed and altered."* I have italicised
the words in the quotation which, I think, unmistakably show
that testator's intention was to "change" and "alter" his
will, not in whole but in part. Why the birth of Taylor's
child should have induced him to make the alteration, it is
not now material to inquire. His stated reason therefor
may not appear satisfactory, but that can not affect the
question to be determined, which is: does the codicil modify
the will, and, if so, to what extent? That question, I think, is
fully answered by the language above quoted from the codicil.
It makes the testator's meaning just as clear as if he had
said: 'Instead of giving one half of my property in re-
mainder to the children of Henry D. Shriver, to take effect
at his death, and the other half in remainder to the children
of Leroy Taylor to take effect at his death, as I did by my
will, I now change my will in that respect, and give the whole
of my property in remainder to the children of both said
Shriver and Taylor, *per capita,* to take effect upon the death
of both Shriver and Taylor, or upon the death of the survivor
of them. In all other respects I reaffirm my will as first
made.' How the language of his codicil can be otherwise
understood is entirely beyond my comprehension. To under-
take to analyze and explain the words of the codicil would,
to my mind, be like demonstrating an axiom, and I shall not

attempt it.   It is enough to quote testator's own language. It speaks his will in unambiguous terms.

The codicil was intended to produce two material alterations in the will.   First, testator wished to postpone the remaindermen until the death of the surviving life tenant; and second, he desired that they, as a class, should share equally in his bounty.   The alteration first mentioned was necessary to insure the carrying into effect of the second, which was his chief purpose in making the codicil.   He intended it to correct an inequality which he saw would likely result among the remaindermen, if his will was left unchanged.   No doubt the thought that his will produced inequality was impressed upon his mind by the birth of Taylor's child.   He then realized, as never before, what might happen, and he wanted to insure equal provision for all the children, as he had done for their respective fathers. The gift over, in the original will, to Henry D. Shriver for -life, of the half of his property which he had given to Taylor, in the event of Taylor's death without children, and the failure to make a similar provision for Taylor in the event of Shriver's death without children, would seem to indicate that, at the date of making his will, testator thought it highly improbable, either that Taylor would leave a child, or that Shriver would leave none, and, therefore, he did not then contemplate the inequality between the two families of children, which his will might produce.   I do not think he intended thereby to favor Shriver more than Taylor.   The birth of Taylor's child was an event which, although he had provided for, he evidently had not seriously thought would happen; and when the child was born he saw clearly what he had not fully appreciated before.   He saw that it was possible for the Taylor child to get one half of his princely estate, whereas the five Shriver children, who were equally related to him in blood, would receive only a one-tenth each.   To avoid such inequality he then made his codicil.   Observe that in his codicil he does speak of Taylor's children, and Shriver's children as constituting distinct classes, but he speaks of the two sets of children as composing one class, and he gives the remainder of all his estate to them *per capita.*   Those are technical words, and must be given their technical meaning,

even when used in a will, unless there is evidence of a contrary intention. *Baer* v. *Forbes,* 48 W. Va. 208; *Hinton* v. *Milburn's Ex'rs.,* 23 W. Va. 166. And, to make assurance doubly sure, testator followed the Latin phrase with its English equivalent, share and share alike. By his will he had given one-half his estate in remainder to the children of his two nephews, *per stirpes.* He changed his will in that respect and, by his codicil, gave it to the children of both, as a single class, *per capita.* The presumption, that because the two life tenants stood equally related to the testator and had equal claims to his affections, his intention was to make equal provision for them, applies with the same force when we come to consider testator's intention with reference to the bounty intended for their respective children. They likewise stood related to him in equal degree, and were as much the objects of his bounty as their respective fathers were. They took by purchase and not by inheritance from their ancestors, the life tenants. Hence, if testator's intention were at all obscured by the terms of his codicil, as to the manner in which his bounty should be shared by the remaindermen, the presumption in favor of equality among them would govern. The presumption is that the testator had in mind the statute of descents when he made his will, and intended his devisees to take in the same proportion that they would have inherited if he had died intestate, leaving them as his only heirs at law. In such event the children of Taylor and Shriver would have inherited *per capita,* and not *per stirpes.* Sec. 3, ch. 78, Code 1913; *Davis* v. *Rowe,* 6 Rand. 335; and *Ball* v. *Ball,* 27 Grat. 325.

"When an estate is devised to persons composing a class related in the same degree by blood to the testator, the presumption naturally arises, nothing to the contrary appearing, that equality was intended; and a will made in such condition should never be so construed as to work greater inequality than the language used unequivocally requires." *Munday* v. *Broaddus' Ex'r.,* (Ky.) 40 S. W. 926. *Grant* v. *Mosely,* (Tenn.), 52 S. W. 508; *Taylor* v. *Taylor,* 23 Conn. 579; *Wilcox* v. *Beecher,* 27 Conn. 134; *Button* v. *Button,* 57 N. Y. App. Div. 297; *France's Estate,* 75 Pa. St. 220; and 30 A. & E. E. L. 669. But I insist that the intention of

testator is too clearly expressed in his codicil to require the assistance of any legal presumtpion whatever to aid in determining what it is.

That testator did not provide for the Taylor child during the time between its father's death and the death of Henry D. Shriver, is not a matter that the court can properly correct. Many contingencies arise, against which testators have failed to provide, but they can not, and do not, justify the courts in failing to give effect to a will so far as made. Testator showed no favoritism or partiality toward either family. He made the same provision for the children of one that he made for the children of the other. If Shriver had died before Taylor, his children would be in like stiuation to the Taylor child. It is simply the happening of a contingency for which the testator did not provide. How can the court make a provision which he omitted? How are we to know that he did not intentionally omit to provide for such contingency as has happened? To my mind it is wholly a matter of speculation to try to determine his intention otherwise than by the language he has used.

The will did not create a joint estate in the life tenants. Each was given an undivided half severally. True their estates possess unity of time and equality of interest, but they do not have that entirety of interest which is an indispensable element in joint estates. Neither was given an interest in the whole, but only an entire interest in the undivided half. 4 Minor's Inst., (2nd ed.) 425. Hence, the doctrine of survivorship does not apply. Is there not, then, partial intestacy? I think so, clearly. Taylor's death before testator caused his devise to lapse; more accurately speaking prevented the estate intended for him from ever coming into existence, for the estate could only come into existence at the death of testator and was to be measured by the duration of Taylor's life, and he was then dead. But the lapsing of the life estate did not defeat the remainder in the half to Taylor and Shriver's children. A remainder no longer needs to be supported by a particular estate. The gift over to Shriver for life, provided for in the original will, could only take effect in case Taylor left no child, and his leaving a child has defeated it. There is no residuary clause making dispo-

sition of it. Testator has made no provision whatever for a contingency, which was almost certain to happen, and which has happened, that is, the death of one life .tenant before the other, and he has expressly postponed the vesting of the remainder to the children until the death of the surviving life tenant. Therefore, partial intestacy is unavoidable. It is true that the law looks with disfavor on partial intestacy, and authorizes such a construction of a will as will prevent it. But for no purpose is a construction authorized which will defeat a testator's clearly expressed will. 30 A. & E. E. L. 668; *Carney* v. *Kain,* 40 W. Va. 758. Any construction in this case that will avoid partial intestacy, will also defeat testator's expressed intention, and it is the intention that governs. Expressed intention is in fact testator's will, and it overcomes the legal presumption against intestacy.

The gift to the children of both Taylor and Shriver, *per capita,* after the death of both Taylor and Shriver, no child being named, prevented the vesting of any estate in them until the death of the surviving life tenant. ''After the death of both,'' means after both are dead, or when the last of the two has died. Only those who fill the description of the class, *at the time the gift is to take effect,* can take; *until* then they are not ascertainable. Hence, the children of both Taylor and Shriver took a contingent, not a vested estate, contingent on their being alive on the death of the surviving life tenant. Their estate did not have the present capacity to take effect in possession upon the death of one life tenant only, but had to await the death of both, and hence it lacked the essential element of a vested estate. 2 Minor's Inst., (2nd ed.), 339. Any one of the children was liable to be defeated by its death before the time for the enjoyment of the estate. Each child's share was also liable to be reduced in quantity by the birth of other children subsequent to the death of testator. Henry Shriver may leave more than five children, or some of the five that he now has may die before he does; and, in either event, the shares of the remaining ones, including also the Taylor child, will be affected accordingly. It must be admitted that, if the Taylor child took a vested remainder, the Shriver children did also, because the vesting of an estate does not depend on the present enjoyment

of it, but on its present capacity to take effect in possession the moment the prior estate ends. The following, which is not an improbable occurrence, serves to illustrate very clearly how the testator's will is defeated by the court's holding. Suppose, that during the life of Henry D. Shriver, one, two, or even four of his children should die, unmarried and without issue. Being their sole heir at law, he would inherit their several shares in fee, and could make any disposition of them he pleased. He could pass title to a stranger and defeat the gift which testator clearly intended only for his and Taylor's children. It is clear he never intended that such a thing should be possible, for he willed that "all the said estate" should go in remainder to the children of both his nephews.

"Under a gift to children by way of remainder, all are entitled who are in existence at the period of distribution, to the exclusion of those who may come into existence at any time afterwards, or who may die previous to that time." 30 A. & E. E. L., (2nd ed.) 721.

"If a legacy be given to an individual, not by name or other special designation, but by reference to certain characteristics at a particular time, the person who has the characteristics at that time is the person entitled to the legacy, and it will then vest in him." *Voorhies* v. *Otterson,* 66 N. J. Eq. 172, 57 Atl. 428. See also *McArthur* v. *Scott,* 113 U. S. 340.

A testator bequeathed to his "son, W. T. Jones the farm on which he now lives during his lifetime, then to his children, if any, if none, to his nearest relatives." A son of W. T. Jones died and a daughter was born to him, both after the death of the testator. The supreme court of Maine held that the devise created a contingent remainder in W. T. Jones' children, as a class, that his deceased son took no interest, and that the after born daughter was let in. The time for determining the contingency, that is whether or not there are children, was held to be at the death of the life tenant, and not at the death of testator. *Webber* v. *Jones,* 94 Me. 429. The decisions supporting that proposition are numerous. The following ones are in point, viz: *Nicholas* v. *Guthrie,* 109 Tenn. 535; *Cole* v. *Creyon.* 1 Hill's Chan'y., (S. C.), 311;

*Teed* v. *Morton*, 60 N. Y. 502; *Webster* v. *Welton*, 53 Conn.
183; *Ballentine* v. *Foster*, 128 Ala. 638; *Lindal* v. *Neal*,
59 S. C. 4; *Hill* v. *Rockingham Bank*, 45 N. H. 270; *Wilson*
v. *Corbin*, 1 Parson's Eq. (Pa.), 347; *Knight* v. *Knight*, 3
Jones' Eq. (N. C.), 167.

Our own case of *Lazier* v. *Lazier*, 35 W. Va. 567, is also
in point. There the testator directed his executors to invest
the proceeds from the remainder of his estate, and pay the
interest derived therefrom to two single daughters, naming
them, ''during their lifetime, or as long as they remained
single, and at their death or marriage'' he directed the
amount so set apart for them to be equally divided among
all his children, including a granddaughter named. It was
held that the fund was not distributable as long as either of
the two daughters was alive and single, and that on the death
of one of them unmarried the whole of the income was to
be paid to the survivor. Thus, in effect, construing the words
''at their death,'' to mean at the death of the last survivor.

Of course it can not be implied that testator intended a
gift over to Henry D. Shriver, the surviving life tenant, for
life. The language will not warrant such an implication.
The contingency of Taylor's death leaving no child had
been provided for, but that contingency did not arise. It
can not be said that he intended the same provision snould
apply in another contingency. Hence, as I see it, it is not
possible to avoid partial intestacy and, at the same time,
give effect to testator's plainly expressed will, and there is
certainly no authority for altering his will.